# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

EMILY GARZA as the next friend of
LEONARD GARZA,

        Plaintiff,

v.                                                                                                No. CIV 98-1520 BB/DJS

HOBBS PUBLIC SCHOOLS, CITY OF
HOBBS, D.T. CARTER, and OFFICER
BELYEU,

        Defendants.

## OPINION

THIS MATTER comes before the Court on Defendants' motions for summary judgment (Docs. 25, 31, 35,), as well as a motion to strike Plaintiff's response to one of the motions for summary judgment (Doc. 40). The Court has reviewed the submissions of the parties and the relevant law, and, for the reasons set forth below, finds that the motion for summary judgment filed by Defendant Hobbs Public Schools should be GRANTED, the motions for summary judgment filed by Defendants City of Hobbs, Detective Carter, and Officer Belyeu should be DENIED, and the motion to strike should be DENIED, although appropriate sanctions will be imposed upon Plaintiff's counsel for his several failures to comply with this Court's rules.

This is a civil rights lawsuit arising out of a police interrogation of Leonard Garza, who was ten years old at the time of the interrogation. As a result of the officers' questioning, Leonard gave a statement implicating his mother and her live-in boyfriend for crimes of which they were later convicted. Leonard maintains his statement was not given voluntarily but was coerced by the

officers' conduct, and that his constitutional rights were thereby violated. He also claims that the principal of his school participated in the questioning to such an extent that Defendant Hobbs Public Schools should be liable for the violation as well. Defendants City of Hobbs, Detective Carter, and Officer Belyeu filed a motion for summary judgment raising the question of issue preclusion (collateral estoppel), and briefly discussing the merits of Leonard's claim. Defendant Schools filed its own summary judgment motion, adopting the issue-preclusion argument and addressing the merits of the constitutional claim. Finally, Defendants City, Carter, and Belyeu ("City Defendants") filed a second motion for summary judgment addressing the merits of the claim at length. Before discussing these motions, the Court will address the issues raised by the failure of Plaintiff's counsel to properly litigate this case.

**Motion to Strike Plaintiff's Response to Summary-Judgment Motion**

Plaintiff's counsel has violated the local rules in a number of ways and thus jeopardized his client's position. For example, in response to the first motion for summary judgment filed by the City Defendants, Plaintiff's counsel faxed an incomplete version of a response to defense counsel. This incomplete version contained a number of references to deposition excerpts, with the page numbers left blank. It also referenced affidavits, a report of a treating mental health professional, and other documents. Neither the depositions nor any of the other material was attached to the response. Subsequently, Plaintiff's counsel submitted a final version of the response, omitting all references to depositions. Again, however, the affidavits, report, and other documents referred to in the response were not attached. Both versions of the response were submitted to opposing counsel in late

2

December 1999 and early January. In addition, the completed, second version of the response was filed directly with this Court.[1]

Later in January, the City Defendants submitted their second motion for summary judgment to Plaintiff's counsel. Plaintiff's counsel filed a motion for an extension of time to respond, asking for an extension until February 4, 2000 (Doc. 37). Inexplicably, however, he did not file this motion until February 25, three weeks after his requested extension had already expired. Subsequently, rather than waiting for this Court to act on his request for an extension, he simply filed a response, on March 23. This response did include three affidavits, from Leonard, his mother, and his mother's boyfriend, Patrick Calvillo. Also filed with this response was a response to the motion for summary judgment filed by Defendant Schools.[2]

Plaintiff's counsel has blatantly violated D.N.M. LR-Civ 7.3 and 7.6. Under Rule 7.6, a response to a motion is due fourteen days after service of the motion. Submitting an incomplete response that is later amended, filing a request for extension of time long after the extension period has expired, and then filing the response without waiting for action to be taken on the extension request, are all examples of unacceptable practice that violate both Rules 7.3 and 7.6. As a remedy for these violations, the City Defendants request that the responses be stricken and that summary judgment be granted for Defendants as a matter of law. However, such an action would be

---

[1] Under local rule 7.3, D.N.M. LR-Civ, this district follows a "packet rule" for motions, under which copies of motions and responses are served on opposing counsel, and when briefing is complete the entire package is filed with the court.

[2] It is not clear whether Defendant Schools complied with this district's "packet rule" concerning motions, when it submitted its motion for summary judgment, since the motion was characterized in part as a response to the City Defendants' motion for summary judgment. The Court has therefore not attempted to determine whether Plaintiff's counsel violated the local rules by simply filing his response to that motion.

tantamount to dismissal of Leonard's case as a sanction for his attorney's poor performance. Factors that must be considered before taking such an extreme step include the following: the degree of actual prejudice to Defendants; the amount of interference with the judicial process; the culpability of Leonard, if any, and of Plaintiff's counsel; whether the Court has warned Plaintiff's counsel that dismissal of the action will be a likely sanction for violations of the rules; and the efficacy of lesser sanctions. *See Connelly v. Kehoe*, 1998 WL 58109 (10th Cir.); *United States ex rel. The Citizen Band Potawatomi Indian Tribe of Oklahoma v. Enterprise Management Consultants, Inc.*, 1992 WL 149868 (10th Cir.); *see also Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992) (discussing factors on dismissal for discovery violations). Although the Court has discretion to dismiss a case due to failures to file timely responses to motions, the above factors must outweigh the judicial system's strong predisposition to resolve cases on their merits. *See id.*

In this case, the degree of actual prejudice to Defendants appears to be slight. The Court has not been apprised of any damage done to Defendants' ability to litigate this case. Instead, the prejudice appears limited to extra work for defense counsel, additional attorney's fees and other costs, and a major amount of aggravation and annoyance.[3] Similarly, there has not been a substantial interference with the judicial process, although additional judicial resources have been required to address sanctions. Furthermore, although Plaintiff's counsel should be on notice that sanctions are a possible result of violations of court rules, no specific warning has been given that the extreme sanction of dismissal could be a result of his dilatory conduct. For these reasons, the Court will not

---

[3]For example, as discussed below, the delayed factual submissions of Plaintiff's counsel, consisting solely of three short affidavits, do not add materially to the factual information already available to the Court, and did not have an impact on the Court's decision regarding the summary judgment motions.

4

grant summary judgment to Defendants as a sanction for the rule violations committed by Plaintiff's counsel.

As to the culpability issue, the Court takes judicial notice of the fact that Plaintiff's counsel has been previously suspended from the practice of law, due to his inability to manage the demands of an overly-large case load. *See In re: Klipstine*, 775 P.2d 247 (N.M. 1989). The problems in this case may again have been a result of extremely poor case management rather than deliberate attempts to delay the case. Even if counsel's performance in this case was not intentional but a continuation of, or a relapse into, the type of conduct that led to his suspension, however, the rule violations must cease immediately. Serious sanctions less severe than dismissal, which are directed at Plaintiff's counsel rather than his client, are appropriate in this case. Therefore, the Court invites from Defendants a request for attorney's fees and costs, detailing the additional expenses incurred as a result of the deficient performance by Plaintiff's counsel. In addition, Plaintiff's counsel is specifically warned that future violations of the local rules, or of the Federal Rules of Civil Procedure, may lead to dismissal of this case. Finally, Plaintiff's counsel is also warned that if he continues to ignore deadlines, either deliberately or through negligence, the Court may refer the matter to both federal and state disciplinary counsel.

**First Motion for Summary Judgment – Issue Preclusion**

Based on Leonard's statements to the police, a search warrant was obtained and the residence occupied by Leonard, his mother, and Mr. Calvillo was searched. Leonard's mother was charged with criminal activity in state court, and moved to suppress the fruits of the search. She argued Leonard's constitutional rights had been violated by the police officers who interrogated him. The state district court refused to suppress the evidence, and entered an order containing findings of fact,

5

conclusions of law, and a determination that Leonard's rights had not been violated. The state court's decision was apparently upheld on appeal, although no copy of the purported appellate court opinion has been furnished to the Court for review.[4] Defendants wish to use this state court decision to preclude Leonard, through his mother as next friend, from now claiming that his constitutional rights were violated when he made his statement to the officers.[5]

As Defendants acknowledge, one of the requirements for the application of issue preclusion is that the party against whom preclusion is asserted must be the same party or in privity with the party that litigated the issue in the original action. *See State v. Bishop*, 832 P.2d 793, 795 (N.M.App. 1992). In this case, the party that litigated the constitutional issue in the original action was Leonard's mother, and Leonard is the party in this action against whom issue preclusion is sought.[6] The question, therefore, is whether Leonard is in privity with his mother for purposes of this case. Defendants, without citation to authority, assert it is "absolutely certain" that Leonard is in privity with his mother, especially since she is representing him as "next friend." The established law, however, is to the contrary. With the exception of a few cases decided in paternity-action settings, courts have uniformly held that parents are not in privity with their children, even with respect to

---

[4]In one of Plaintiff's counsel's submissions to the Court, he referred to such an appellate opinion, but again failed to attach a copy.

[5]The doctrines of claim preclusion and issue preclusion apply to federal § 1983 cases and state-court criminal proceedings, as long as there was a full and fair opportunity to litigate the particular issue in the state proceedings. *See Allen v. McCurry*, 449 U.S. 90, 98-105 (1980); *Roberts v. Hochstetler*, 592 F.Supp. 703, 709-10 (N.D. Ind. 1983).

[6]Although Leonard's mother is named as Plaintiff in this case, it is only in her representative capacity as Leonard's next friend. Leonard is the real Plaintiff in interest, and it is for that reason that the Court refers to Leonard as the actual Plaintiff in this opinion. *See York v. Northern Hosp. Dist. of Surry Cty.*, 386 S.E.2d 99, 102 (N.C.App. 1989) (distinguishing between person appearing in action in individual capacity and same person appearing in different action in representative capacity).

6

cases arising out of the same incident or occurrence. *See Leonhard v. United States*, 633 F.2d 599, 617 (2d Cir. 1980)*; Glover v. Narick*, 400 S.E.2d 816, 824 (W.Va. 1990) (it is generally agreed that privity does not typically arise from the relationship of parent and child); *York*; *Schlumm v. Terrence J. O'Hagan P.C.*, 433 N.W.2d 839, 845 (Mich. App. 1988) (parents were not precluded in later legal malpractice action by court's finding in son's criminal trial); *Richburg v. Baughman*, 351 S.E.2d 164, 166 (S.C. 1986); *Rudow v. Fogel*, 382 N.E.2d 1046, 1048 (Mass. 1978); 18 Wright, Miller & Cooper, *Federal Practice and Procedure*, § 4459 (1981). This is so even if a parent represents herself in the first action, and then participates in the subsequent action in a representative capacity on behalf of her child. *See Freeman v. Lester Coggins Trucking, Inc.*, 771 F.2d 860, 863 (5th Cir. 1985) (ordinary rule is that party appearing in representative capacity for others is not bound by result of earlier suit in which he appeared only in individual capacity); *York* (same). Therefore, Leonard is not bound by the doctrine of issue preclusion in this case. He may litigate the question of whether his constitutional rights were violated, despite the fact that his mother already litigated that issue, and lost, in her state-court criminal case.

**City Defendants' Second Motion for Summary Judgment – Merits**

"Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting Fed. R. Civ. P. 56(c)). "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." Id. On a motion for summary judgment, the issue is "not whether [the court] thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury

could return a verdict for the plaintiff on the evidence presented." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). "Nevertheless, a jury question does not exist because of the presence of a mere scintilla of evidence; rather, there must be a conflict in substantial evidence to create a jury question." Walker v. NationsBank of Florida, 53 F.3d 1548, 1555 (11th Cir. 1995). The Court will consider Defendants' motions for summary judgment in light of these standards.

Extracting an involuntary confession or statement by coercion is a due process violation actionable under § 1983. *See Rex v. Teeples*, 753 F.2d 840, 843 (10th Cir. 1985). This is so even if the coercion is psychological and not physical. *Id.* In evaluating the voluntariness of a statement, this Court must consider the totality of the circumstances, and determine whether the statement was obtained by improper inducement or psychological coercion of sufficient severity that the suspect's will was overborne. *See United States v. Erving L.*, 147 F.3d 1240, 1248-49 (10th Cir. 1998). In making that determination, the Court takes into account a number of factors, including the suspect's age, intelligence, and education; the length and nature of the detention and questioning; whether the suspect was advised of his constitutional rights; and whether the suspect was subjected to any physical punishment. *Id.* at 1249.

As noted above, Plaintiff's counsel attached few exhibits to his briefs, and therefore presented very little evidence in his attempt to avoid summary judgment. Almost all of the evidentiary material reviewed in this case was submitted by Defendants. This material included deposition excerpts from Leonard and his mother, affidavits of Officer Belyeu and Detective Carter, and the findings and conclusions made by the state district judge in the criminal case against Leonard's mother. These findings and conclusions contain specific facts concerning the timetable of Leonard's interrogation and statements made to Leonard by Detective Carter. Therefore, an initial question arises concerning

the extent to which these findings and conclusions should be considered in addressing the motions for summary judgment.

It is clear the state court's findings and conclusions are not binding on this Court, as discussed above. However, the prevailing view appears to be that these findings and conclusions may be considered as evidence at the summary-judgment stage of these proceedings. *See Carter v. United States*, 973 F.2d 1479, 1484 (9th Cir. 1992) (jury had found certain facts in prior case; this verdict did not have preclusive effect in subsequent action, but the findings represented by the jury's verdict did have probative value for summary judgment purposes); *Carey Lumber Co. v. Bell*, 615 F.2d 370, 377-78 (5th Cir. 1980) (bankruptcy court was not bound by prior state court judgment, but detailed recitations of findings in state court judgment were properly considered as evidence in connection with the motion for summary judgment); *In re Int'l Loan Network, Inc.*, 160 B.R. 1, 9-10 (Bankr. D.C. 1993) (findings made in different case by federal district judge were not binding on bankruptcy court, but were admissible as evidence for summary-judgment purposes).[7] The Court will therefore evaluate the findings and conclusions made by the state district court as evidence comparable to the affidavits and depositions submitted in this case.

Viewing the evidence in the light most favorable to Leonard, the following are the facts of this case. Leonard was a ten-year-old student in the fourth grade. He was considered "bright" by his principal and was doing well in school, but had received some special education to address a reading deficiency. The day before Leonard was interrogated by the police, he brought a quantity of

---

[7]While the Court need not decide the issue at this time, it appears the state court's findings and conclusions would not be admissible at trial, at least in a jury trial, due to the danger of the jury giving those findings and conclusions undue weight. *See Nipper v. Snipes*, 7 F.3d 415, 417 (4th Cir. 1993); 31 M. Graham, *Federal Practice and Procedure*, § 6759, pp. 423-24 (Interim Ed. 1997) (discussion of *Nipper* and subsequent cases in footnote 21).

marijuana to school and gave it to a friend. This fact was communicated to the school authorities and the local police department. The next day, Leonard was called to the principal's office at approximately 8:00 a.m. Officer Belyeu and the principal were present in the office, and Officer Belyeu questioned Leonard for fifteen to twenty minutes. Leonard admitted he had more marijuana in his possession, and gave it to Officer Belyeu. He told Belyeu and the principal he had obtained the marijuana from a man who was standing near the trash can when Leonard got off the school bus that morning.

The principal attempted to contact Leonard's mother, without success. Leonard's mother had not provided the school with a current telephone number. The police department maintains it sent a patrol unit to Leonard's house to notify his mother of the developments, but Leonard's mother contends no one knocked on her door that morning. At 8:30 a.m., Officer Belyeu concluded his interview and called Detective Carter to come to the school. Leonard waited in the principal's office for Detective Carter to arrive, and the principal offered Leonard refreshment during the wait. Detective Carter arrived at the school at approximately 9:30 a.m., spoke with other officers for fifteen to twenty minutes, and then began interviewing Leonard in the teacher's break room. The principal was in and out of the break room during the interview. This interview lasted for over an hour, with Leonard saying he did not want to get anyone in trouble and did not want his mom and dad to be angry at him. During the interview, Detective Carter, Officer Belyeu, or both "kept on like yelling at" Leonard. One or both of the officers "scared" Leonard. Detective Carter told Leonard he didn't want to see a young man go to jail. According to Detective Carter, Leonard "finally," at 11:00 a.m., admitted he had stolen the marijuana from Patrick Calvillo, and described where the marijuana was located in his residence and when he had seen it. Based on this information, Detective Carter

10

obtained a search warrant, and Leonard's home was searched. Quantities of marijuana, cocaine, methamphetamine, and explosives were found in the home, along with an automatic pistol. Criminal charges were then filed against Leonard's mother and against Calvillo.

In sum, there is evidence in this case that a ten-year-old boy was interrogated for almost two hours by two different police officers, without a parent or guardian present. One or both of the officers yelled at Leonard, Leonard was scared, and one officer threatened him with jail.[8] Leonard remained reluctant to make a statement to the officers, other than his original claim as to the source of the marijuana, until he "finally" admitted the truth. This evidence clearly raises a genuine issue of material fact as to whether this ten-year-old boy's will was overborne, and as to whether his statement was not voluntary but was extracted from him by coercion. *See, e.g.*, *Griffin v. Strong*, 983 F.2d 1540, 1542 (10th Cir. 1993) (officer's threat that suspect would not see his daughter again, combined with promise of lesser punishment and protection in prison, made confession involuntary); *Aguilar v. State*, 751 P.2d 178, 180 (N.M. 1988) (suspect of subnormal intelligence subjected to threats and promises of leniency; confession was involuntary as matter of law). The City Defendants will not be granted summary judgment on the merits of Leonard's claim.[9]

---

[8] The principal, who was present when the "jail" comment was made, characterized it not as a threat but more as just one of the possibilities that could arise. However, as Detective Carter knew or should have known, a ten-year-old boy would not be sent to jail for an offense such as this, but at most would be put through the juvenile justice system. At minimum, therefore, Carter misrepresented to Leonard the possible punishment he faced for his actions.

[9] In the City Defendants' brief in support of the second motion for summary judgment, most of the argument is directed at the question of the legality of the officers' detention of Leonard. The Court agrees with the City Defendants' position that the officers had probable cause to believe Leonard had committed a crime, and therefore had probable cause to detain him. However, as discussed above, part of Leonard's cause of action is based on the officers' interrogation, and the length and nature of the detention is not the sole ground for his claim. Since the detention is intertwined with the interrogation, the Court will not at this time grant partial summary adjudication

Furthermore, the Court will deny the Officer Belyeu's and Detective Carter's requests for qualified immunity. Both officers knew or should have known that established law recognizes a constitutional violation when a statement is extracted from a ten-year-old boy pursuant to threats, yelling, and an interrogation lasting almost two hours.[10]

**School's Motion for Summary Judgment**

The School and Leonard both agree the controlling authority with respect to the School's conduct in this case is *New Jersey v. T.L.O.*, 469 U.S. 325 (1985). Both also agree the standard to be applied is whether the School's conduct was reasonable under the circumstances. In an effort to demonstrate questions of fact on that issue, Leonard seeks to attribute to the School all of the actions of the police officers who interrogated Leonard, simply because the questioning occurred at the school. He does so without citation of any authority in support of his position, and the Court disagrees with such an attribution. Even in the case of a direct supervisor, *respondeat superior* or vicarious liability is not available in a § 1983 action. *See Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir. 1998). Instead, there must be some showing that the government entity contributed to the constitutional violation through execution of a policy or custom. *Id.* In this case, there has been no evidence of a policy or custom on the part of the School, concerning questioning of students by the police. The School's only involvement in the events leading to this case came through the principal's actions, which were limited to notifying the police a crime had been committed, facilitating the officers' interviews with Leonard by furnishing the rooms in which the

---

eliminating the detention aspect from this case. Any questions concerning the viability of that aspect of the claim can be resolved by appropriate jury instructions.

[10]The Court notes it is not finding that such yelling and threats actually occurred; this opinion simply holds a genuine issue of fact has been raised as to whether they did occur.

interviews took place, sitting in on one interview, and being in and out of the other. The Court notes the principal has not been named as a defendant in this case, so the only possible basis for liability of anyone associated with the School is the one discussed above, regarding a custom or policy that might have contributed to the alleged constitutional violations by the law enforcement officers. Since no evidence of such a custom or policy has been presented, summary judgment on behalf of the School is appropriate on Leonard's federal claim.[11]

Leonard has also raised a state-law claim against the School, apparently based in negligence. The School argues there is no waiver of immunity in the New Mexico Tort Claims Act for any such claim. Leonard did not respond to that point in his brief, and the Court's review of the applicable statute does not reveal the existence of such a waiver. *See* NMSA 1978, § 41-4-1 to -12. Summary judgment will therefore be granted on Leonard's state-law claim against the School.

**Conclusion**

Based on the foregoing, the Court will deny the City Defendants' motions for summary judgment. The Court will grant the School's motion, and the School will be dismissed from this case. Finally, the sanctions discussed above will be imposed upon Plaintiff's counsel.

---

[11]Even if the merits of Leonard's claim against the school were to be evaluated, due to the participation of the principal in the events leading to that claim, the Court would grant summary judgment to the School. The School's involvement in the questioning was as follows: the principal learned that Leonard had brought marijuana to school the previous day, and contacted the police; the principal summoned Leonard to his office to talk to Officer Belyeu, and was present during that initial interview; during that interview Officer Belyeu was calm and reasonable; the principal then allowed Detective Carter to interview Leonard in the teachers' break room, and was in and out of the room during that interview. There is no evidence the principal took an active role in either interview, or yelled at Leonard, or applied any pressure of any sort.

An Order in accordance with this opinion will issue.

Dated this 6th day of April, 2000.

　　　　　　　　　　　　　　　　　　　／s／ Bruce D. Black
　　　　　　　　　　　　　　　　　　　BRUCE D. BLACK
　　　　　　　　　　　　　　　　　　　United States District Judge